Minshall, J.
On February 9, 1894, Catharine Woog commenced an action of .replevin in the court of common pleas of Greene county against the'Peoples’ National Bank of Jamestown for the recovery of certain personal property. The property was taken by the sheriff under the writ, appraised and delivered to the plaintiff on her executing an under *307 taking in double the amount of the appraised value, with Robert E. Richardson as surety, as required by section 5819, Revised Statutes. The obligation of the undertaking is, among other things, that if judgment is rendered against the plaintiff, she . will return the property taken or pay the assessed value at the election of the defendant. A trial was had, and the jury found for the defendant, that the value of the property taken was $665, and that the interest of the bank therein was $555. The bank electing to take the value of its interest in the property as found, judgment was rendered in its favor for that sum. Execution having- been issued and returned unsatisfied against the plaintiff, on motion of the bank, the court made the following- order:
“October 9, 1894. '
•October Term, 1894.
“On motion of defendant, and it appearing to the court that execution has been issued and returned, unsatisfied, against the plaintiff herein, for the collection of the judgment in favor of defendant against said plaintiff, and it appearing that Robert Richardson is surety on the undertaking given by the plaintiff, it is ordered that said Robert Richardson appear in court at 10 o’clock A. M., October 11, 1894, and show cause, if any he has, why jugdment should not be entered against him for the breach of such replevin undertaking, and why he should not be made party defendant to such action, and be adjudged liable to the defendant for the amount of its judgment against the plaintiff, to-wit, the sum of —■— and costs, according to the terms and conditions of said undertaking.
“It is further ordered that defendant cause a copy of this entry to be served on said Robert *308 Richardson forthwith, and on further motion of defendant, it is ordered that this ease be and the same is hereby placed on the trial docket of this court;” which was served on the surety, Richardson.
The motion and order was made under a provision, contained in section 5820, Revised Statutes, as amended April 3, 1891, (88 Laws, 274) which is as follows: “That after the rendition of a judgment in any cause in which an undertaking has been given in compliance with the provisions of this chapter, (Replevin) on motion to the court, the sureties upon the undertaking shall be notified to appear in such court within ten days from the issuing of such service, and show cause why judgment should not be entered against them for the breach of such undertaking, whereupon such sureties shall be made parties defendant in such action, and the same shall proceed as other civil actions.”
Two classes of questions are made in the case, one as to practice, and the other as to the merits of the showing- made. The surety appeared and made a showing, which was held insufficient; he was thereupon ordered to be made a party and to answer. He objected to being required to answer without a petition being filed. We think there was no necessity for filing a petition. It is not contemplated by the proceeding, being intended as a summary one on undertakings in replevin. The law enters into and becomes a part of each undertaking of this kind; and the surety must be held to know that he may be called on in this summary mode to show cause why judgment should not be entered against him on a breach of the undertaking. The motion and the order served on him are all that can be required. The filing' of a petition as in an *309 action on the undertaking would afford him no advantage by way of defense, that he does not have in making a showing against the order. He may show that he did not sign the undertaking-, or that the judgment has-been paid, or that it was obtained by mistake or fraud, and he would not be permitted to show more in an action on the undertaking, as will appear further on. There was then no error in not requiring a petition to be filed. By. signing the undertaking, he became a quasi party to the suit, and is held to have notice of all the procedings thereafter in the suit that may affect his liability on the undertaking, .particularly the judgment, which is sub modo, a judgment against him. There was no reason, however, as we can see, for requiring him to answer after he had been made a party, and filed his showing. A showing, if sufficient, is all that is required to prevent a judgment; if insufficient, and there is no application for leave to amend, the court may without more, render judgment against him. This is the extent of the proceeding. It was designed to give a speedy remedy against those who, by becoming surety on such undertakings, have assisted another in depriving a party of his property. The provision is neither harsh nor unjust, and should be liberally constrüed so as to afford the remedy intended in such cases. It is neither reasonable nor just that one who has been deprived of his property by a proceeding in replevin should be put to a long course of litigation in recovering compensation for what he has lost. This is the principle of justice that underlies the law. So that, whoever as surety signs a replevin bond, whether it be for the delivery of the property to the. plaintiff, or for its redelivery by the defend *310 ant, assumes the obligation of making speedy restitution to the aggrieved party, as the judg-ment of the court may determine if his principal does not. The signing of the undertaking and the rendition of a judgment against the principal, make a prima facie case against the surety; and devolves oh him to show why the same judgment that has been rendered against his principal, should not be rendered against him as surety. But requiring- him to answer after having made a showing, was in no way prejudicial to him, as, by his answer, lie set up the matter contained in his showing, and other matter that could have been incorporated by amendment, so that his answer as amended, presents all he had to say as a showing why judgment should not be entered against him.
The question then arises, whether his answer makes a sufficient showing why judgment should not be rendered against him for- a breach of the undertaking. His first defense is, in substance, that he signed the undertaking- on the express agreement with the sheriff, that it should not be delivered as an undertaking, until the plaintiff had indemnified him by executing- a mortgage on certain real estate, which was disregarded by the sheriff. Second, that it was signed before the writ was served, on an agreement with the sheriff, that whatever property might be taken, should be retained by him for five days; and if in that time he should inform the sheriff that he had not been indemnified, the property should be returned to the defendant. That within that time he notified the sheriff that he had not been indemnified, and demanded that the sheriff return the property, which he did not do. Third, that the property sought to be replevined was not in the possession *311 of the defendant, and was appraised in the possession of a third person, who claimed some lien upon it. Subsequently, he amended his answer by inserting the following as a fourth defense: “That the sole foundation for the claim of said Peoples1 Bank, on which said judgment was obtained against said Catharine Woog, was the indebtedness of said Loretta Haughey, to said bank, referred to in the answer of said bank, filed herein, March 22, 1894, to secure which indebtedness said chattel mortgage or bill of sale, was given, in addition to other and .ample security held by said bank for the payment thereof. The said verdict and judgment were rendered and given in favor of said bank against said W oog, without any notice or knowledge thereof, on the part of said Robert E. Richardson, and without any opportunity on his part of showing the aforeg’oing facts, or to make a defense to said action, or in any way to object to said judgment or to any of the proceedings in said cause, or to institute proceedings for a new trial of said action. Said verdict and judgment were obtained either upon false testimony and fraudulent conduct on the part of said bank, or through a gross misapprehension on the part of the jury of the testimony; and although the record in said cause is made to show that the parties appeared on the trial thereof, yet, the said Catharine Woog was not present, either in person or by counsel, and made no defense or appearance to said action, for the reason set forth in the same amendment filed herein, January 19, 1895, and for the further reason that she was sick and unable to attend said trial, even if such collusion had not been entered into between her and said bank, and the entry on the record showing her appearance was made through mistake *312 and inadvertence by the clerk of this court and without the knowledge or approval of the court..
‘ £2d. Said bank has now in its possession, funds obtained from the sale of property delivered to it by said Loretta Haughey for the purpose of paying and satisfying said claim of said bank against her, or any judgment which might be obtained on account of such claim and has also other securities in its possession for such purpose, which money and securities are more than sufficient to satisfy in full said claim, and said judgment against said Woog. Yet said bank wrongfully, and in fraud of the rights of said Richardson, fails, neglects and refuses, to apply said moneys and securities, or any part thereof, towards the payment or satisfaction of said judgment.
££3d. The said Robert E. Richardson, prior to the signing of said pretended undertaking, in the manner and upon the conditions as heretofore alleged in this answer, was assured by said bank, through its authorized agent and its president, that all claims held by said bank against the said Loretta Haughey, were either fully paid, or the payment thereof amply secured; and upon such assurance, as well as upon the conditions and agreements set forth in his answer, the said Richardson signed said pretended undertaking, which he would not have done but for such assurance, upon which assurance he fully relied, believing the same to be true and upon which he had a right to rely.
££4th. Said Robert E. Richardson, further says, that all the proceedings herein against him, were begun without the knowledge or consent of said defendant bank, and without its authority, and are *313 now being carried on without its consent or authority.”
The case, on the issues, was tried to a jury, and the court, at the conclusion of the evidence, directed a verdict for the bank. The evidence is all set forth in a bill of exceptions.
We perceive no error in the direction of a verdict for the bank. There was no evidence that a court or jury could regard, that the bank had in its possession, funds obtained from the sale of property delivered it bjr Mrs. Haughey, which, with other security, would satisfy in whole or in part, the claim of the bank against her; or, that Richardson, before signing the undertaking, had been informed by any one representing the bank, that its claim was fully paid or. amply secured. With the property secured by the Haughey mortgage, tñe claim of the bank may have been amply secured; but this very property was taken from it by the writ of replevin sued out by Mrs. Woog. Neither was there any evidence of collusion or fraud in obtaining the judgment against the plaintiff in the replevin suit. If Mrs. Woog was not present, she had an opportunity to be present; and if she was prevented by sickness from being present at the trial, that would have been a proper ground for setting the judgment aside and granting a new trial, had such application been made, but it was not.
Then, as to the other matters relied on, in regard to signing the undertaking, on an agreement with the sheriff, that it was not to be delivered until the surety, Richardson, was indemnified by the principal; and, if not so indemnified, the property' taken was to be returned at the end of five days, or, any of the objections made as to the accuracy *314 of the judgment rendered against Mrs. Woog: We think it well settled, that none of these objections can now avail the surety in an action on the undertaking, and, for a like reason, cannot in this proceeding.
1. It is too well settled to be questioned, that a surety on a bond of any kind cannot defeat his liability thereon by showing that it was delivered in violation of agreements between himself and the principal, or any other co-maker, unknown to the party for whose benefit it was given. It will be sufficient to cite some of the numerous cases or. this point: Bigelow v. Comegys, 5 Ohio St., 256; Harrison v. Wilkin, 69 N. Y., 412; Dangler v. Baker, 35 Ohio St., 673; Taylor County v. King, 73 Iowa, 153; Smith v. Peoria County, 59 Ill., 412; Deardorff v. Foresman, 24 Ind., 481; McCormick v. Bay City, 23 Mich., 457; State v. Peck, 53 Maine, 284. In Bigelow v. Comegys, the decision is placed on what is termed the settled rule, “that where one of the two persons must suffer a loss by fraud or misconduct of a third person, he who first reposes the confidence, or commits the first oversight, must bear the loss.”
In a suit in replevin, before the property taken can be delivered to the plaintiff, the statute requires an undertaking to be given .by him with sufficient surety, that, among other things, he will pay the assessed value of it, in case judgment shall be against him, which must be returned with the order. After the property has thus been delivered to the plaintiff, and judgment against him, to permit the surety on the undertaking’ to set up-that it was delivered to the sheriff in the nature of an escrow, and was returned by him contrary to their understanding’, but of which the defendant *315 had no knowledge, would be a gross fraud on his rights. Counsel cite the ease of Ogden v. Ogden, 4 Ohio St., 182, in support of the claim that a replevin undertaking may be delivered as an escroto. There are two observations, either of which will dispose of this contention. (I.)- In the case just cited, the question arose on the delivery of a deed. But a deed, in this regard, cannot be likened to the delivery of a replevin undertaking. The latter is required by the statute, as a part of the proceeding in the case. The sheriff in taking and returning it, performs an official duty; and the opposite party has a right to rely upon what he has returned as performed in the discharge of that duty, as in the case of any other official act performed by him. And again, the law does not authorize him to take and hold such an undertaking as an escrow. (2.) The case has, however, recently been explained, and its application distinguished in Schurtz v. Colvin, 55 Ohio St., 274, 288. It is there held, that where a deed he]d in escrow, is wrongly delivered to the grantee by the person holding it, a purchaser in good faith is not affected by the fact that the deed had been wrongly delivered to the grantee. The holding was placed on the principle stated in Bigelow v. Comegys, to be settled law, and also in Dangler v. Baker, supra..
2. We think it also clear that the surety on a replevin undertaking, cannot, in the absence of fraud or mistake, be heard to question the validity, or the amount of the judgment rendered against his principal in an action on the undertaking. When he signed the paper, he undertook to pay what might be so ascertained and adjudged against his principal. He cannot, therefore, be heard to say, that the judgment is wrong. If there were any *316 errors -in the judgment, he should, through his principal, have caused them to be corrected in a proper proceeding. Not having done so, and the judgment being in force, and unreversed, he is bound by it to the same extent that his principal is. This is in strict analogy tó the rule in an action on a guardian’s bond. Braiden v. Mercer, 44 Ohio St., 343; in an action on a.n administrator’s bond, Slagle v. Entrekin, Id., 637; and in an action on an undertaking' for the discharge of an attachment, Jayne’s Ex’r v. Platt, 47 Ohio St., 262. All the reasoning in the last case will apply with equal force to this one. Like decisions have been made upon replevin bonds by the courts of many of the other states. ' See the instructive opinion of the judge, who decided the case in the common pleas, 2 Nisi Prius, 394; where the authorities have been industriously collected and carefully discriminated.

Judgment affirmed.