JOHNSON COUNTY, APPELLEE, v. CHAMBERLAIN BANKING HOUSE ET AL., APPELLANTS.

FILED NOVEMBER 21, 1907. No. 14,965.

1. **Banks:** BONDS: EXECUTION. The cashier of a bank is the proper officer to execute a bond on its behalf to secure a deposit of public money made therein, and the bank will be bound by such execution, in the absence of some rule or regulation adopted by the directors or stockholders requiring special authority on the part of the cashier to execute such bonds, and notice of such fact brought to the attention of the obligee therein.

2. **Bonds:** SURETIES. A surety signing a bond after other sureties have executed the same affirms the genuineness of the previous signatures.

3. ——: ——: LIABILITY. A surety who signs a bond upon the condition that it is to be signed by other sureties is not released from liability thereon because the others did not sign, unless notice of the condition on which his signature was obtained is brought home to the obligee.

APPEAL from the district court for Johnson county: WILLIAM H. KELLIGAR, JUDGE. *Affirmed.*

*L. C. Chapman, S. P. Davidson, J. B. Douglas* and *E. M. Tracy,* for appellants.

*J. C. Moore* and *Hugh La Master, contra.*

DUFFIE, C.

This case was before us on a former appeal taken by the plaintiff from a judgment dismissing its petition. The judgment was reversed and the case remanded for further proceedings. The opinion on the former appeal is found in 74 Neb. 549. When the case again reached the district court, the defendants filed separate answers. Graff and Taylor, two of the sureties, in their answers alleged, first, that the bond was not signed by the Chamberlain Banking House by any one having due authority. The answer of Taylor contained the further allegation that the cashier and teller of the bank represented to him that one W. R. Barton was also to sign the bond as surety before delivery thereof, and both of these sureties allege it was represented to them that the name of the bank was signed by a party having due authority. As a second defense, the answers allege that the bank is in the hands of a receiver; that the suit in which the receiver was appointed is still pending and undetermined, and that this suit cannot be maintained in consequence of the pendency of such action. As a third defense, defendants allege that the plaintiff has received 19 per cent. of the debt sued for in the way of dividends paid by the receiver of the bank by order of the court; fourth, a general denial. A demurrer was interposed to the first, second and third counts or defenses alleged in these answers, which was sustained by the court, and the case went to trial upon the issue made by the general denial. The trial resulted in a judgment for the plaintiff, and the defendants Graff and Taylor have appealed.

The first assignment of error relates to the action of the district court in sustaining the demurrer interposed to the alleged defense set up in the answer, viz., that the name of the bank was not signed to the bond by any one having authority. The bond shows upon its face that the name of the bank was signed by. "Charles M. Chamberlain, Cashier," that it is conceded that said Chamberlain was

10

cashier of the bank at the time the bond was executed, and the proof shows that the name of the bank attached to the bond is in his handwriting. As said in the former opinion, "the bank can contract only by its agents," and the cashier is the proper agent to execute a bond on its behalf. This being so, the bank, as said Judge AMES, is without doubt bound by such signature. But, even if the name of the bank was attached to the bond by a person who had no authority, still the sureties would not be released because of such want of authority. In *Selser v. Brock,* 3 Ohio St. 302, it was held that a surety who had signed his name to a promissory note after the names of others in effect affirmed the genuineness of the previous signatures, and could not avoid liability by showing that such names had been forged by the principal, but of which the creditor had no knowledge. And in *Bigelow v. Comegys,* 5 Ohio St. 256, it was held that a surety on a replevin bond could not set up the defense that he was induced to sign the bond upon the fraudulent representation of the principals that a cosurety was responsible and had already signed it, when, in fact, his signature was a forgery. The same principle was held by the supreme court of Indiana in *Helms v. Wayne Agricultural Society,* 73 Ind. 325. These cases were approved and followed by this court in *Lombard v. Mayberry,* 24 Neb. 674, and such is the settled law of the state. The court did not err in overruling the first defense set out in the answer of the sureties.

The second defense, that the suit was prematurely brought because of the pendency of the receivership action, is not relied upon in the briefs of defendants, and all that need be said relating to that question is that the present suit was commenced September 2, 1902, while the action in which the receiver was appointed was commenced September 11, 1902.

And the fact alleged in the third defense, that the plaintiff has received dividends from the receiver and credited the same on the amount due from the bank, cannot be regarded as an accord and satisfaction of its claim, and is a

matter going to benefit the defendants and of which they cannot complain.

The fact that the cashier and teller of the bank represented to Taylor that one Barton would also sign the bond is no defense, unless knowledge of such representation was brought home to the county. The fact that Taylor may have been induced to sign the bond by fraudulent representations made to him by officers of the bank does not affect the right of action against him by one not a party to the fraud. *Martin v. Campbell*, 120 Mass. 126; *Casoni v. Jerome*, 58 N. Y. 315. In Brandt, Suretyship and Guaranty (1st ed.), sec. 355, it is said: "A bond, perfect on its face, apparently duly executed by all whose names appear therein, purporting to be signed, sealed and delivered by the several obligors, and actually delivered by the principal without stipulation, reservation or condition, cannot be avoided by the sureties upon the ground that they signed it on the condition that it should not be delivered unless it should be executed by other persons who did not execute it, when it appears that the obligee had no notice of such condition, and nothing to put him on inquiry as to the manner of its execution." There are cases which hold that if the body of the bond contains the names of sureties, and the parties so named have not signed and executed the bond, this is a circumstance sufficient to put the obligee upon inquiry and charge him with notice of the condition (Brandt, Suretyship and Guaranty (1st ed.), sec. 357), but the bond in this case was perfect on its face, and there was no fact which would in anywise put the county upon inquiry as to whether the sureties whose names appeared upon the bond signed upon the condition that other sureties were to join therein.

The several special defenses alleged by the defendants and contained in the first, second and third counts of their answers were not good in law, and the court did not err in sustaining the demurrer interposed against the same.

We find no error in the record and recommend an affirmance of the judgment.

EPPERSON and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment is

AFFIRMED.